**UNITED STATES of America,
Appellant,**

v.

**Ermil GRANT, Appellee.**

**No. 79–1483.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1980.

Decided April 29, 1980.

Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark. (argued), for appellant; W. H. Dillahunty, U. S. Atty., Little Rock, Ark., on brief.

William R. Wilson, Jr., Little Rock, Ark. (argued), for appellee; James K. Young, Russellville, Ark., on brief.

Before BRIGHT and McMILLIAN, Circuit Judges, and HUNTER,* District Judge.

ELMO B. HUNTER, District Judge.

This is an appeal from an order entered by the district court ** suppressing incriminating statements made by appellee to federal law enforcement officials during preindictment and postindictment interviews. This appeal involves issues of whether appellee's statements were voluntary and whether they were made pursuant to plea bargaining negotiations. *See* Fed.R. Crim.P. 11(e)(6) and Fed.R.Evid. 410. After a very careful review of the entire record, we affirm in part and reverse in part.

Appellee was a county judge of Pope County, Arkansas. He was not a member of the judiciary and is not a lawyer. His position was administrative in nature. A portion of his duties involved purchasing merchandise for the county.

On March 21, 1979, appellee was telephoned by an agent of the Federal Bureau of Investigation ("FBI") around lunch time. He was informally requested to appear at the FBI office in Russellville, Arkansas, for an interview. Appellee appeared that same day in the afternoon. He was met by FBI agents William Stage a⌐d Joe Phillips. Agent Stage was the case agent from Little Rock, Arkansas, and the person who conducted the interview. Agent Phillips was the local agent in Russellville and merely attended the interview. Agent Stage began the interview by informing appellee of an investigation regarding his alleged involvement in a kickback scheme with vendors who sold merchandise to the county. Next, Agent Stage read appellee his constitutional rights and made inquiries about appellee's comprehension of his rights. Appellee did not indicate any difficulty in understanding the rights that were available to him. Appellee was then given a "warning and waiver" form which outlined his constitutional rights and contained provisions to waive any objection to the use of his statement. Agent Stage read this form to appellee and appellee signed the form.

Appellee gave a statement that was paraphrased by Agent Stage and appellee read and signed it. The statement admitted complicity in the alleged kickback scheme. There is no dispute in the record regarding this point. The significant fact for the purposes of this appeal is that at some point prior to appellee signing the statement, but subsequent to his receipt of his constitutional rights and his signing of the waiver form, Agent Stage told him that the United States Attorney would let him plead to a one count indictment in exchange for his "cooperation." Appellee was further told that if he was interested in this arrangement, he should talk to the United States Attorney by March 30, 1979. Agent Stage testified that he was given the authority to make this offer by Assistant United States Attorney Kenneth Stoll. The record is not

---

* The Honorable Elmo B. Hunter, District Judge for the Western District of Missouri, sitting by designation.

** The Honorable Elsijane Trimble Roy, District Judge for the Eastern and Western Districts of Arkansas.

determinative on the question of whether appellee had already made incriminating statements at the time of the offer for cooperation. In any event, appellee's response to the proposal was that he wanted to see the United States Attorney the following day to further explore the suggested plea bargain. This initial interview lasted approximately two hours.

The next day, March 22, 1979, appellee appeared at the federal offices in Little Rock. He first met with FBI agents. Again, appellee was advised of his rights and he signed another waiver form. He then made two further incriminating statements to FBI agents. After appellee's statements had been produced, he was taken to meet Assistant United States Attorney Stoll. Mr. Stoll first informed him that he did not have to say anything. Appellee expressed a willingness to cooperate. The prosecutor told him that he was the subject of an investigation and that his case was going to be presented to the next grand jury. Mr. Stoll told appellee that if he continued to cooperate, he would be charged in a one count indictment and that both the court and the probation office would be informed of his assistance. Apparently, appellee made further incriminating statements to Mr. Stoll. Immediately after this meeting, appellee read and signed the two statements he had made to the FBI agents prior to the meeting. Appellee was in the government's offices approximately three hours.

Appellee was indicted on one count of engaging in racketeering activities in violation of 18 U.S.C. § 1962(c) on April 2, 1979. On April 4, 1979, appellee returned, on his own, to the FBI office in Russellville, and spoke with Agent Phillips. Agent Phillips told appellee that he was not the case agent and that the matter was in the hands of the United States Attorney. Further, Agent Phillips told appellee there was nothing that he could do for him. Appellee then proceeded by expressing a fear of incarceration and stated that he would, in lieu of a prison sentence, be willing to pay a substantial fine.

The district court, on these facts, concluded in a bench ruling that appellee's will had been overborne, and that all of the statements he made were involuntary. As such, the district court granted appellee's motion to suppress.

The appellant appealed the suppression order, and on November 27, 1979, we entered an order of limited remand for the purpose of determining the exact test utilized by the district court in entering its suppression order. On January 10, 1980, the district court entered its "findings of fact and conclusions of law" reaffirming its earlier order of suppression. The district court concluded that in view of the totality of the circumstances, appellee's will had been overcome in the preindictment interviews; and thus, his decision to make the incriminating statements was not the product of a free and rational choice. Regarding the postindictment statement that appellee made to Agent Phillips, the district court construed this statement to be connected with an offer to plead guilty, and therefore, excluded it under Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410.

Appellee argued on appeal that all of the statements were involuntary, and alternatively, even if they were voluntary, they should have been excluded as being related to a plea bargain negotiation under Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410.[1]

This complex appeal draws into question the applicability of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410[2] in a case involving

---

1. We note that appellee first raised the issue of the inadmissibility of his statements under Fed. R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 on appeal. Normally, in the absence of plain error, such initiation of reviewable issues is prohibited on appeal. *See United States v. Librach*, 536 F.2d 1228 (8th Cir. 1976), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1977);

and Fed.R.Crim.P. 52(b). Insofar as the district court relied in part upon this theory in its findings following our remand, the issue is squarely before us.

2. Fed.R.Crim.P. 11(e)(6) states in part:

(6) *Inadmissibility of Pleas, Offers of Pleas, and Related Statements.* Except as other-

statements made to FBI agents and an Assistant United States Attorney during preindictment and postindictment interviews in which an offer to plead to a one count indictment was extended to appellee during the preindictment interviews. The question raised here touches upon an area of current controversy in the newly developing law of the evidentiary use of plea bargain related statements. The interpretive history of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 in various courts has been checkered, and, as such, difficulties are presented in any attempt at uniform application. *See United States v. Verdoorn*, 528 F.2d 103 (8th Cir. 1976); *United States v. Brooks*, 536 F.2d 1137 (6th Cir. 1976); *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977); *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1979); *United States v. Levy*, 578 F.2d 896 (2d Cir. 1978); *United States v. Arroyo-Angulo*, 580 F.2d 1137 (2d Cir. 1978), *cert. denied*, 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1979); *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978); and *United States v. Davis*, 617 F.2d 677 (D.C.Cir.1979).

We noted in *United States v. Verdoorn, supra*, that the essential purpose behind Fed.R.Crim.P. 11(e)(6) is to promote active plea negotiations.

Plea bargaining has been recognized as an essential component of the administration of justice. "Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). If such a policy is to be fostered, it is essential that plea negotiations remain confidential to the parties if they are unsuccessful. Meaningful dialogue between the parties would, as a practical matter, be impossible if either party had to assume the risk that plea offers would be admissible in evidence. 528 F.2d at 107.

Other circuits have endorsed this view by observing that the purpose of Fed.R.Crim.P. 11(e)(6) is to encourage "frank discussions in plea bargaining negotiations." *United States v. Arroyo-Angulo, supra*, 580 F.2d at 1148. *See also United States v. Robertson, supra*, 502 F.2d at 1364–67; *United States v. Davis, supra*; and Comm. on Rules of Practice and Procedures, Judicial Conf. of the U. S., Preliminary Draft of Proposed Amendments, 77 F.R.D. 507 (1978).

■ While the purpose underlying Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 is generally agreed upon, exactly what constitutes plea bargain negotiations as contemplated in the rules and the parallel question of the appropriate scope of the rules are unresolved issues. The Fifth Circuit undertook an exhaustive analysis of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 in *United States v. Robertson, supra*. There, the en banc court held that statements made by two suspects to law enforcement officers on a parking lot were admissible. The suspects had offered to talk in exchange for leniency for their wife and girlfriend, respectively. The Fifth Circuit held that this exchange did not amount to plea bargain negotiations. The court drew a distinction between "plea negotiations" and "bargained confessions" holding that the defendant's statements were properly characterized in the latter category. *Id.* at 1368–71. In reaching its result, the Fifth Circuit noted that the determination of whether an exchange between an accused and agents of the government is a plea bargain should be based upon the totality of the surrounding objective circumstances. *Id.* at 1366. We agree that a proper resolution of this threshold question necessarily involves case by case adjudication.

■ We are confronted in this appeal with the question of whether law enforcement personnel, other than United States government attorneys, can engage in plea bargain negotiations subject to the eviden-

wise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
Fed.R.Evid. 410 possesses identical language.

tiary proscriptions of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410. *See United States v. Robertson, supra,* 582 F.2d at 1369 n.23; *United States v. Davis, supra,* 617 F.2d at 683 n.17. In *United States v. Stirling, supra,* the Second Circuit noted "that 'the primary concern of the draftsmen [of Fed. R.Crim.P. 11(e)(6) and Fed.R.Evid. 410] . . . was with the fairly formal plea bargaining between the United States Attorney and counsel for the defendant after charges had been, or were about to be made.' Weinstein's Evidence ¶ 410[07] at 410–40." 571 F.2d at 731. The Second Circuit reiterated this interpretation in *United States v. Arroyo-Angulo, supra,* 580 F.2d at 1148. *See also United States v. Levy, supra,* 578 F.2d at 900–01; and Fed. R.Crim.P. 11(e)(1).

A contrary point of view has been expressed in *United States v. Herman, supra,* where the Fifth Circuit rejected a government argument that postal inspectors who were engaged in discussions with the accused regarding a plea in exchange for count reduction lacked authority to engage in such bargaining. The court stated that "the relevant factor is the defendant's perception of the government official's actual authority." *Id.* 544 F.2d at 798; *accord, United States v. Brooks, supra.*

In our view, the *Herman* case extends the scope of Fed.R.Crim.P. 11(e)(6) and Fed.R. Evid. 410 far beyond their intended boundaries.[3] We are more inclined to accept the reasoning of the Second Circuit with an exception in circumstances where the law enforcement official is acting with express authority from a government attorney. Without such an exception, government attorneys might attempt to avoid the operation of the rules by authorizing law enforcement officials to conduct plea negotiations.[4]

The first question inherent in an analysis of the March 21, 1979, meeting

---

**3.** The Advisory Committee on the Federal Rules of Criminal Procedure was also quite critical of the *Herman* and *Brooks* decisions in its Note on the Proposed Amendments to Fed. R.Crim.P. 11(e)(6) and Fed.R.Evid. 410. *See also* 77 F.R.D. 507 (1978). The Committee's view is that Fed.R.Crim.P. 11(e)(6) and Fed.R. Evid. 410 were never intended to extend to discussions between law enforcement officials and the defendant. Rather, as the Note emphasizes, these type of discussions are better analyzed under the established law governing interrogations by law enforcement officials—*i. e.,* the law of the voluntariness of confessions. In commenting on the original intentions for the rules, the Committee noted that the goal of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 is "to permit the unrestrained candor which produces effective plea discussions between the attorney for the government and the attorney for the defendant or the defendant when acting *pro se.*" The Proposed Amendments, as approved by the Supreme Court, which will go into effect December 1, 1980, barring adverse congressional action, seek to codify more precisely this point of view. *See* Act of July 31, 1979, Pub.L.No.96–42, 93 Stat. 326. The Proposed Amendments for both rules read in relevant part as follows:

(6) *Inadmissibility of Pleas, Plea Discussions, and Related Statements.* Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceedings, admissible against the defendant who made the plea or was a participant in the plea discussions:

(A) a plea of guilty which was later withdrawn;
(B) a plea of nolo contendere;
(C) any statement made in the course of any proceeding under this rule regarding either of the foregoing pleas; or
(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

It is instructive to observe the Committee's thinking on the proposed changes:

This change, it must be emphasized, does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible. Rather, the point is that such cases are not covered by the per se rule of 11(e)(6), and thus must be resolved by that body of law dealing with police interrogations.

**4.** While the general law of the voluntariness of confessions would govern such attempts, the literal, *per se* language of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 might encourage prosecutors to opt for factual postures in which the fluid "totality of the circumstances" approach is utilized in reviewing the difficult question of determining if an accused person's will has been overborne. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 223–27, 93 S.Ct. 2041, 2045–2047, 36 L.Ed.2d 854 (1973).

with the FBI agents and appellee is whether the discussion amounted to a plea bargain situation as governed by Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410. In view of the offer that was made to appellee to plead to a one count indictment in exchange for cooperation, which included the giving of incriminating statements, we are convinced that this proposal created the necessary precondition for a plea bargain negotiation.

The appellant argued in its brief that appellee lacked the subjective intent during the interview necessary to be able to invoke the protections of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410, citing *United States v. Robertson, supra*, and *United States v. Geders*, 585 F.2d 1303 (5th Cir. 1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). We do not agree. While it is clearly inferable from the record that appellee may have gone to the interview without any intention to enter a plea bargain, his actions upon learning of the offer unquestionably reflected his desire to enter into the bargain. Upon hearing that the offer was open until March 30, 1979, appellee immediately expressed a desire to meet with the United States Attorney the next day—a course of action that he pursued. We are especially mindful of the fact that this individual had no prior experiences

as an accused person in a criminal context. His behavior appears to us, quite predictably, to have been in the nature of "wait and see" before trying to negotiate. Therefore, we cannot agree that appellee had no intent to enter a plea bargain.

We are further persuaded that the interview of March 21, 1979, amounted to a plea bargaining session given the express authority extended by Assistant United States Attorney Stoll to Agent Stage to make the offer.[5] Indeed Agent Stage testified that such authorization was highly unusual.[6]

The appellant argued, although not in this context,[7] that appellee had already incriminated himself in the March 21, 1979, interview at the time the offer was made. We reject, given the state of the record, any contention that appellee's statements made before the plea offer was extended would be admissible. The record is simply unclear at precisely what point the offer was made to appellee.[8] It is also unclear as to what, if anything, of an incriminating nature had been stated by appellee before the offer was made. Given the degree of ambiguity on this point, we feel obliged to defer to the findings of the district judge who had the opportunity to observe these witnesses. *See United States v. Herman, supra*, 544 F.2d at 798 n.10.

---

**5.** Our reasoning on this issue is consistent with the thinking of the Advisory Committee on the Federal Rules of Criminal Procedure to the extent that we are dealing with an FBI agent possessed of actual, express authority to convey a plea offer from a government attorney. We feel that a contrary ruling would clearly eviscerate the existing rules, and further, would be a strained interpretation of the Proposed Amendments.

**6.** We note the following colloquy at the hearing:

THE COURT: The court has one question. Perhaps its just that I'm not familiar with the procedures that are followed. Is it customary when you are taking a statement from someone that during the middle of taking the statement—if the Court understands your testimony correctly—that you tell them to come down here and see the U.S. Attorney and the U.S. Attorney will probably enter a one-count indictment against them, or make any statement at all concerning what the

U.S. Attorney will do? Is it the practice that you usually engage in?
AGENT STAGE: No, your honor. No, its not, your honor.
THE COURT: I've never heard of this.
AGENT STAGE: In this situation we had an individual who had already—a vendor—who had already stated that he had bribed Mr. Grant. I was empowered by the United States Attorney, through Mr. Stoll, after I interviewed him or during the course of the interview, that I could tell him that. And that's why I did it.

**7.** The majority of appellant's arguments addressed the voluntariness issue.

**8.** Agent Stage testified that the offer was made "into the interview" and "after he [appellee] made admissions to me." Appellee testified that he was offered the plea bargain just after he signed the waiver form and prior to making any statements. Agent Phillips testified that if you divided the interview up into quarters, the offer was made in the second quarter.

The statements made by appellee the following day in Little Rock are likewise excludable. It seems clear that appellee was seeking to pursue the offer made to him on the preceding day. The admissions he made before meeting with Assistant United States Attorney Stoll were produced, in our view, as a part of the plea bargain negotiation process as he understood it. And, *a fortiori*, the statements appellee made to Mr. Stoll are inadmissible.[9]

█ Appellant further argued in its brief that the evidentiary safeguards of Fed.R. Crim.P. 11(e)(6) and Fed.R.Evid. 410 should be unavailable to appellee because of his "breach" of the plea bargain in choosing to plead not guilty. In *United States v. Stirling, supra*, the Second Circuit held that where a defendant had entered into a written plea bargain, the terms of which included an appearance before a grand jury, and subsequent to the appearance the defendant withdrew his plea and sought suppression of his grand jury testimony, such testimony was not excludable under Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410. The court noted that "[h]is breach of the agreement removed that protection. Such a result can hardly be said to undercut the confidence and candor needed for successful and fair plea negotiations. It simply means that once an agreement is finalized its terms will be enforced." *Id.* 571 F.2d at 732; *see also United States v. Davis, supra.* Appellant's use of this argument is inapposite here. As we have observed, appellee's statements at the preindictment interviews were made in relation to appellee's negotiation of the plea bargain. As the District of Columbia Circuit has correctly perceived, "[r]ule 11(e)(6) focuses primarily on the negotiation stage." *United States v. Davis, id.* 617 F.2d at 683. If statements made by an accused person during plea bargain negotiations are admissible if that person decides to change the plea after the plea bargain is struck, then Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 would be so circumscribed in their applica-

ble scope that the rules would be rendered effectively meaningless.

The more difficult question before us is whether appellee's statement to Agent Phillips after the indictment is also excludable. A proper disposition of this question involves a close review of the record. Agent Phillips is stationed at Russellville, Arkansas. He is the only FBI agent stationed there. He was not the agent assigned to this case. Agent Stage came to Russellville on March 21, 1979, and asked Agent Phillips to telephone appellee to invite him in for an interview. Agent Phillips had not been authorized by any government attorney to enter into plea or count negotiations. Agent Phillips merely sat through the interview, and did not participate in the plea bargaining discussions. He had no further contact with appellee until after appellee was indicted. After the indictment was returned on April 2, 1979, Agent Stage called Agent Phillips to have him contact appellee about a court appearance on April 10, 1979, in Little Rock. Agent Phillips testified that he relayed the message to appellee on April 3, 1979. On April 4, 1979, appellee went to Agent Phillips office and asked for help. Agent Phillips told him that he was not the case agent assigned to the case, that the matter was in the hands of the U.S. Attorney, and that he could not help him. Whereupon, appellee proceeded to state that he would be willing to pay to a very substantial fine in the matter, but that he wanted to avoid jail.

█ The appellant seeks evidentiary use of this statement. In the district court's findings following our remand, the court altered its earlier basis for exclusion of this statement, holding that the statement was made in relation to an offer to plead guilty under Fed.R.Crim.P. 11(e)(6) and Fed.R. Evid. 410. We disagree. In light of our foregoing analysis, this statement clearly was not a part of the original plea bargain negotiations. First, Agent Phillips had never been authorized by a government attor-

---

**9.** In light of our conclusion that the statements made by appellee at the first two interviews are inadmissible under Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410, we do not have to reach the question of voluntariness.

ney to negotiate with appellee. Second, the express authority extended to Agent Stage was just to offer an arrangement to plead to a one count indictment. There was no authority extended to discuss any recommendations the government might make as to sentencing. Third, Agent Phillips explicitly told appellee before he made the statement that he was not the case agent and could not discuss anything with him. Fourth, the plea bargain was an arrangement to cooperate in exchange for an opportunity to plead to a one count indictment. The "bargain" was final. Appellee had "cooperated" and the one count indictment had come down. Thus, the government had already fulfilled its part of the arrangement. Nothing additional within the terms of the original bargain could have been negotiated at this stage. *Cf. United States v. Davis, supra* ; and *United States v. Stirling, supra.* In any event, Agent Phillips was not the person appropriate for such negotiations. In view of these circumstances, this statement was not made in connection with the negotiations for the plea bargain.

▆ Therefore, we must determine if the statement was made voluntarily.[10] As such, it is our duty to make an independent review of the entire record to decide the question of the voluntariness of appellee's statement to Agent Phillips. *See Jurek v. Estelle*, 593 F.2d 672, 677 (5th Cir. 1979); *Johnson v. Hall*, 605 F.2d 577, 580 (1st Cir. 1979); *United States v. Vannelli*, 595 F.2d 402, 406 (8th Cir. 1979); *Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976); and *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966).

Having undertaken such a review, we are unable to conclude that appellee's statement was involuntary. The test for determining voluntariness has been a long standing precedent. Simply, the question is whether the confession was "extracted by

any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). The Supreme Court has consistently maintained this test. *See Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976).

While the *Bram* test has long been followed, it has not been interpreted to be applied on a strict, *per se* basis. *See United States v. Reynolds*, 532 F.2d 1150 (7th Cir. 1976); *United States v. Springer*, 460 F.2d 1344 (7th Cir.), *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); *United States v. Frazier*, 434 F.2d 994 (5th Cir. 1970); *United States v. Ferrara*, 377 F.2d 16 (2d Cir.), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967). Rather, as expressed by the Supreme Court, determinations of voluntariness are based upon an assessment of all of the circumstances and factors surrounding the occurrence when the statement is made. *Schneckloth v. Bustamonte, supra; Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). This flexible standard allows for judicial determinations of voluntariness in myriad situations without such decision making being hampered by rigid and potentially artificial restraints. The "totality of the circumstances" inquiry requires the reviewing court to investigate and analyze "both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte, supra* 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. Based upon a complete review of all relevant considerations on the issue of voluntariness, the ultimate question must be answered of whether the statement was "the product of

---

**10.** There was no contention advanced by appellee that during any of the three interviews he was not fully apprised of his constitutional rights or that he failed to comprehend those rights. *See United States v. Curtis*, 568 F.2d

643, 647 (9th Cir. 1978); and Nowak, Foreward—Due Process Methodology in the Postincorporation World, 70 J.Crim.L. & C. 397, 410 (1979).

an essentially free and unconstrained choice" or the result of an overborne will. *Culombe v. Connecticut, supra* 367 U.S. at 602, 81 S.Ct. at 1879, 6 L.Ed.2d at 1057.

Here, the basic contention advanced by appellee is that the offer of a one count indictment in exchange for cooperation with federal authorities at the preindictment interviews constituted a promise of leniency, and thus, as a consequence of the offer, appellee's will had been overcome and remained overcome at the postindictment interview. Appellee argued that his statement to Agent Phillips is subject to the "taint" of the preindictment interviews, and is thereby excludable as poisoned fruit. Our review of the record in this appeal does not convince us of the validity of appellee's position. Even assuming, *arguendo*, that appellee's statements in the preindictment interviews had been involuntary,[11] we fail to see how appellee's decision to appear under these circumstances approximately two weeks after his last preindictment interview can be classified as involuntary. He appeared on his own. He was not solicited. He was told that there was nothing Agent Phillips could do for him. There were no promises, coercive tactics or threats. Further, we observe that appellee is a man of at least average intelligence. He had been in a responsible position in local government. He was not under arrest or in custody. Even if appellee's will had been overborne earlier by the offer to plead to a one count indictment, he made the statement to Agent Phillips well after the date of the indictment. As such, it was unrelated to the original "promise." Taken together, all of these factors do not indicate involuntary behavior. *See generally Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). Indeed, assuming any "taint" from the earlier interviews, it would have been thoroughly attenuated by the time appellee made this postindictment statement. *See United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

For the foregoing reasons, we affirm the result reached by the district court in determining that all preindictment statements made by appellee were inadmissible. The district court's decision that appellee's postindictment statement to Agent Phillips was inadmissible is reversed.

Affirmed in part, reversed in part, remanded for further proceedings.

---

11. In so assuming, we are not expressing any opinion on the issue.