**Martin M. RACHLIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 83–1250.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1983.

Decided Dec. 9, 1983.

David W. Russell, Kansas City, Mo., for appellant.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

This is a direct appeal from Martin M. Rachlin's conviction for passing a counterfeit bill in violation of 18 U.S.C. § 472. Rachlin contends that certain oral and written statements made by him should have been suppressed by the district court. He contends the statements are inadmissible because they were made as a part of plea negotiations under Fed.R.Crim.P. 11(e)(6)(D), that the statements were made involuntarily, and were made because of ineffective assistance of counsel. In addition, Rachlin claims the government failed to introduce sufficient corroborative evidence to justify a finding of guilt. We reject his arguments and affirm the judgment of the district court.[1]

BACKGROUND

In the fall of 1981 the United States Secret Service was investigating the passing of counterfeit Federal Reserve Notes in Kansas and Missouri. An informant advised the Secret Service that Rachlin was involved and had counterfeit bills in his possession. Two special Secret Service Agents went to Rachlin's house in Prairie Village, Kansas on February 26, 1982 and spoke with him. During the course of this discussion Rachlin admitted having received a couple of bogus bills. These admissions are not the subject of this appeal.

Subsequently, Rachlin's attorney, Mark Slatkin, set up a meeting with an Assistant United States Attorney, Amanda Meers, in order to discuss his client's situation. On March 8, 1982 Slatkin met with Meers and two Secret Service Agents. The record is clear that Meers informed Slatkin at that time that the government was not prepared to plea bargain since Meers knew very little about the case at that point (prior to March 8, it appears that Meers had no knowledge of the Rachlin investigation).

Later, Rachlin's attorney set up another meeting, and on March 12, 1982 Rachlin, with his attorney Slatkin, met with Secret Service Agents.[2] After signing a waiver of rights form and in the presence of counsel, Rachlin admitted his involvement with counterfeit money in a detailed statement in which he named his source, listed the businesses where he made passes and the denominations of the bills passed at each. One of the businesses where Rachlin admitted passing a $100.00 counterfeit bill in September, 1981 was Woolf Brothers on the Plaza in Kansas City, Missouri. This negotiation was later corroborated by the testimony of a bank teller who discovered a counterfeit $100.00 bill in a deposit belonging to Woolf Brothers.

Rachlin also placed telephone calls on March 12, 15 and 16 to an individual to whom Rachlin had supplied counterfeit bills. These calls were made from the Secret Service Field Office in Kansas City and taped with Rachlin's knowledge and permission.

Plea negotiations eventually did take place and culminated with a proposed agreement being sent to defense counsel. Rachlin decided not to enter the agreement, however, and was subsequently indicted on October 6, 1982 for the one-note pass at Woolf Brothers. Rachlin moved to suppress all his written and oral statements. At a joint suppression hearing and trial[3] held on November 9 and 10, 1982, the district court denied Rachlin's motion and found him guilty as charged in the indictment. Rachlin was sentenced to fifteen months imprisonment to be served as a split sentence under 18 U.S.C. § 3651. Rachlin was to be confined for thirty days and then placed on probation for three years.

PLEA NEGOTIATIONS

Rachlin contends that the statements he made on March 12, 15 and 16 are inadmissi-

1. The Honorable Howard F. Sachs, United States District Judge, Western District of Missouri.

2. No one from the United States Attorney's office was present at this meeting.

3. Rachlin waived his right to a jury trial.

ble because they were made as a part of plea negotiations and hence should have been suppressed under Fed.R.Crim.P. 11(e)(6)(D).[4] The government responds by stating that Rule 11(e)(6)(D) only prohibits statements made during negotiations with an attorney for the government, and since the statements at issue here were made to Secret Service Agents Rule 11 is not applicable.

■ Fed.R.Crim.P. 11(e)(6)(D) and Fed.R. Evid. 410 have been the subject of much litigation. *See, e.g.,* Annot., 60 A.L.R.Fed. 854 (1982); *United States v. Grant,* 622 F.2d 308 (8th Cir.1980); *United States v. Robertson,* 582 F.2d 1356 (5th Cir.1978); *United States v. Levy,* 578 F.2d 896 (2d Cir.1978); *United States v. Herman,* 544 F.2d 791 (5th Cir.1977); *United States v. Brooks,* 536 F.2d 1137 (6th Cir.1976); *United States v. Verdoorn,* 528 F.2d 103 (8th Cir.1976). Despite some lack of uniformity as to its application, however, the purpose of Rule 11(e)(6) is relatively clear. The goal of the rule is to "promote active plea negotiations" and to "encourage 'frank discussions in plea bargaining negotiations.'" *United States v. Grant,* 622 F.2d at 312. Part of the difficulty in applying Rule 11(e)(6) was due to confusion about whether the rule was intended to apply only to formal plea bargaining between the prosecuting attorney and the defendant or whether it could also apply to informal bargaining between law enforcement officials and the defendant. *See* Weinstein's Evidence ¶ 410[07] (applies only to formal bargaining); Wright & Graham, Federal Practice and Procedure: Evidence § 5347, at 382–89 (disagrees with Weinstein view); *United States v. Grant,* 622 F.2d at 313. This confusion has been eliminated[5] by the adoption of the 1979 amendments to Rule 11(e)(6)(D) which substantially incorporate the Weinstein approach by limiting the rule's application to plea negotiations between the defendant or his attorney and an "attorney for the government."[6] Fed.R.Crim.P. 11(e)(6)(D).

■ We carved out an exception to this rule, however, "where the law enforcement official is acting with express authority from a government attorney." *United States v. Grant,* 622 F.2d at 313. In *Grant,* the law enforcement agent was given authority by the United States Attorney to tell the defendant that the prosecutor would let him plead to a one-count indictment in exchange for the defendant's cooperation. We held the defendant's statements in response to this offer were inadmissible under Rule 11(e)(6) even though the United States Attorney was not physically present when the offer was made. We recognized that "[w]ithout such an exception, government attorneys might attempt to avoid the operation of the rules by authorizing law enforcement officials to conduct plea negotiations." *Id.*

Here, however, the exception is inapplicable. Rachlin was never told by the Secret Service Agents that they had authority to plea bargain. More importantly, the Secret Service made no offer of any "deal" to Rachlin at the time of his statements and were not relaying a prosecution offer, as was the case in *Grant.* In contrast to the

---

**4.** Rule 11(e)(6) in pertinent part provides:
   [E]vidence of the following is not . . . admissible against the defendant who made the plea or was a participant in the plea discussions: . . . (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
   To the same effect is Fed.R.Evid. 410.

**5.** *Cf.* Wright & Graham, *supra,* at 389.

**6.** The Advisory Committee explained:
   It [amended Rule 11(e)(6)(D) ] thus fully protects the plea discussion process authorized by rule 11 without attempting to deal with

confrontations between suspects and law enforcement agents, which involve problems of quite different dimensions. This change, it must be emphasized, does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible. Rather, the point is that such cases are not to be covered by the per se rule of 11(e)(6) and thus must be resolved by that body of law dealing with police interrogations.
77 F.R.D. 507, 535 (1978) (citations omitted).

situation in *Grant,* there is no evidence that any Assistant United States Attorney ever gave the agents any authority to bargain with Rachlin.

Rachlin attempts to get around the fact that no attorney for the government was present at the time of the admissions by putting forth a theory of ongoing negotiations. This theory is that plea negotiations began on March 8 when defense counsel met with Amanda Meers, the prosecutor. These alleged negotiations, it is contended, carried over to the meetings defendant had with the Secret Service Agents on March 12, 15 and 16. We reject this theory.

Even assuming the parties were negotiating a plea or were attempting to open negotiations at the March 8 meeting, nothing which occurred in these conversations was ever used or quoted by the government. More importantly, the Assistant United States Attorney was in no way involved in arranging the March 12 meeting where the incriminating statements were given. Rachlin's attorney independently initiated the meeting with the Secret Service Agents. The action taken by defendant was not a prescheduled continuation of the March 8 meeting, but instead was a decision by defense counsel to take some action in the hope of inducing leniency from the government. We hold that in these circumstances, Rule 11(e)(6)(D) is not available to suppress Rachlin's statements on March 12, 15 and 16.[7] *See United States v. Grant,* 622 F.2d at 316; *United States v. Ceballos,* 706 F.2d 1198, 1203 (11th Cir.1983).

## VOLUNTARINESS

Having decided that Rachlin's statements on March 12, 15 and 16 are not excludable under Rule 11, we must determine if the statements were made voluntarily. The test that has evolved views the totality of the circumstances and considers whether the statement was voluntarily made or whether the defendant was somehow overreached. *See, e.g., Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). The issue is whether the confession was "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897); *see also United States v. Grant,* 622 F.2d at 316. Using the flexible totality of the circumstances approach requires the reviewing court to consider the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, *see, e.g., Haynes v. Washington,* 373 U.S. 503, 508–10, 83 S.Ct. 1336, 1340–41, 10 L.Ed.2d 513 (1963); *Spano v. New York,* 360 U.S. 315, 321, 79 S.Ct. 1202, 1206, 3 L.Ed.2d 1265 (1959); *Ashcraft v. Tennessee,* 322 U.S. 143, 152–54, 64 S.Ct. 921, 925–26, 88 L.Ed. 1192 (1944), and the characteristics of the accused, *see, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973); *Davis v. North Carolina,* 384 U.S. 737, 742, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966); *Haley v. Ohio,* 332 U.S. 596, 599, 68 S.Ct. 302, 303, 92 L.Ed. 224 (1948), in order to determine if there has been a violation of due process.

Essentially, Rachlin contends there were promises of leniency made to him

---

7. Even assuming without deciding that the prosecutor's presence could somehow be constructively implied at the March 12 meeting, suppression of Rachlin's statements would still not be warranted under Rule 11. At no time did the government make any offer in the way of a bargain to Rachlin or his attorney. At most, the agents may have told Rachlin that his cooperation would be made known to the prosecutor. Defendant could not reasonably view this as a plea offer. *See, e.g., United States v. Cross,* 638 F.2d 1375 (5th Cir.1981); *United States v. Sikora,* 635 F.2d 1175 (6th Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980); *United States v. Posey,* 611 F.2d 1389 (5th Cir.1980); *United States v. White,* 617 F.2d 1131 (5th Cir.1980); *United States v. Pantohan,* 602 F.2d 855 (9th Cir.1979). Nor was there any offer by Rachlin to plead guilty in exchange for a government concession. We agree with the district court that "[i]nstead of seeking protection [for the statements], total cooperation was offered, without concurrently pursuing a bargain." *United States v. Rachlin,* No. 82–00150, slip op. at 7 (W.D.Mo. Jan. 6, 1983); *see also United States v. Levy,* 578 F.2d 896 (2d Cir.1978).

which coerced the confession. We disagree. The agents may well have told Rachlin that it was in his best interest to cooperate. However, we find no indication that the agents here engaged in any direct or implied promises, coercive tactics or threats. *See United States v. Grant,* 622 F.2d at 316–17. Rachlin's statements were offered in the hope of leniency, and not as a response to a promise of leniency. At the time of his statements, Rachlin was not under arrest or in custody. The Secret Service did not solicit his appearance. Rachlin is a stockbroker and, as the government contends, appears to be at least of average intelligence. He was read a statement of his rights and signed a waiver of them before he confessed. He freely told of his involvement in counterfeiting in the presence of his attorney. In these circumstances, we cannot say that his admissions were the result of an over borne will.

## INEFFECTIVE ASSISTANCE OF COUNSEL

As his final ground for exclusion of his statements on March 12, 15 and 16, Rachlin asserts that the admissions resulted from the ineffective assistance and advice of counsel. He contends that former counsel breached his duty to prepare adequately by failing to investigate the extent of the government's evidence before advising cooperation. Further, he alleges counsel should at least have had a firm understanding with the government as to the conditions of plea bargaining before advising Rachlin to make a statement. The district court held (1) no sixth amendment right to counsel had yet attached at the time he gave his statement so that any inquiry into the effectiveness of legal advice was not mandatory; (2) in the alternative, incompetent advice has not been shown.

■ It is clear that at the time of Rachlin's statements, he enjoyed no sixth amendment right to counsel. Rachlin had been neither arrested nor indicted at the time; the government's case had not been developed enough to enable charges to be filed. Thus, since adversary judicial proceedings had not yet begun, Rachlin's sixth amendment right to counsel had not yet attached. *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

■ Rachlin contends, however, that he had a fifth amendment right to counsel which attached at the time of his conversations with the Secret Service Agents on February 26. Thereafter, he asserts, he had a constitutional right to the effective assistance of counsel. Again, we disagree. It is noted that the district court stated Rachlin was not in custody at the February 26 meeting at his home. *United States v. Rachlin,* No. 82–00150, slip op. at 4 (W.D.Mo. Jan. 6, 1983). Secondly, even assuming his fifth amendment right to counsel applied then, it does not follow that he had a constitutional right to counsel at the March 12 meeting. The fifth amendment right to counsel attaches upon custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It was Rachlin, through counsel, who initiated the March 12 meeting. He was not under arrest or otherwise deprived of his freedom in any way and he was in no way coerced into making the statements. Hence, he could not have reasonably believed he was in custody at the time of the giving of the confession. *United States v. Phillips,* 688 F.2d 52, 55 (8th Cir.1982). Because Rachlin did not have a constitutional right to counsel at the time he made his statements, we need not inquire into the effectiveness of legal advice given at the time. *See United States v. Zazzara,* 626 F.2d 135, 138 (9th Cir.1980); *Brown v. United States,* 551 F.2d 619, 620 (5th Cir.1977).

■ In any event, we agree with the district court that ineffective advice of counsel has not been shown. In order for Rachlin to show that counsel was ineffective, he must demonstrate:

(1) that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he suffered material prejudice as

a result. A presumption exists that counsel is competent, and the exercise of reasonable judgment, even when hindsight reveals a mistake, does not render a lawyer negligent or lacking in competence in rendering his services.

*Langston v. Wyrick,* 698 F.2d 926, 930 (8th Cir.1982) (citations omitted).

Appellant has failed to meet his burden here. Rachlin's attorney made reasonable inquiry calculated to secure information in the hands of the prosecution. Furthermore, we do not believe it was unreasonable strategy to offer cooperation to the government in the hope of leniency. Rachlin desperately wished to avoid formal charges or at least receive probation. Attempting to "stonewall" the government would have risked unmitigated prosecution. From the point of view of counsel at the time, it cannot be said his advice was incompetent.[8]

## CORROBORATION

As a final point, Rachlin contends that the government failed to sufficiently corroborate the confession and that hence the evidence was insufficient to justify a finding of guilt. It is true Rachlin's conviction cannot be based solely on his incriminating statements. There must be substantial independent evidence corroborating the confession. *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). It is sufficient if the government's independent evidence tends to establish the reliability or trustworthiness of the confession. *United States v. Wolf,* 535 F.2d 476, 478 (8th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 287 (1976); *see also United States v. McColgin,* 535 F.2d 471, 474 (8th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976).

Here, the reliability of Rachlin's confession is established by (1) the detailed nature of the admissions, *see United States v.*

*Gresham,* 585 F.2d 103, 106 (5th Cir.1978); and (2) the testimony of a bank teller that she discovered a counterfeit $100.00 bill in a deposit that Woolf Brothers made on September 23, 1981. The teller's testimony adequately establishes the reliability of Rachlin's admission that he passed a $100.00 bogus bill at Woolf Brothers in September of 1981. It would be highly unlikely that Rachlin would know a counterfeit $100.00 bill was passed at Woolf Brothers in September if he were not the person who passed it. Therefore, we believe the confession is trustworthy and that the evidence, taken as a whole, is sufficient to convict Rachlin of the one-note pass at Woolf Brothers. The judgment of conviction is affirmed.

---

8. It should be noted that counsel did eventually produce a good plea bargain in which the government agreed not to oppose probation, even though Rachlin later decided not to enter the agreement.