IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRANDON WYCHE, | § | |
| | § | No. 253, 2014 |
| Defendant-Below, | § | |
| Appellant, | § | |
| | § | Court Below – Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for New Castle County |
| STATE OF DELAWARE | § | |
| | § | Cr. ID No. 1208026082A |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: March 11, 2015
Decided: March 26, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, and **VALIHURA**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, Delaware, Attorney for Defendant-Below, Appellant.

Andrew J. Vella, Esquire, Department of Justice, Wilmington, Delaware, Attorney for Plaintiff-Below, Appellee.

**HOLLAND**, Justice:

A Grand Jury returned a four-count indictment against Brandon Wyche ("Wyche") charging him with Murder First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"), and Possession of a Firearm By a Person Prohibited ("PFBPP"). The case proceeded to a jury trial, which resulted in a hung jury on June 24, 2013. On February 17, 2014, Wyche filed a motion *in limine* to exclude the prior recorded statement of a witness for the State, Carlyle Braithwaite ("Braithwaite"). The Superior Court denied the motion and the matter proceeded to a second trial. A jury found Wyche guilty of Murder First Degree and PFDCF.[1] The Superior Court sentenced Wyche to be incarcerated for a term of life plus 25 years.

In this appeal, Wyche argues that Braithwaite's statement to the police was involuntary because the police failed to administer *Miranda* warnings prior to questioning him. Wyche relies on *Taylor v. State*[2] in support of his contention that an unwarned statement made by a witness in custody is always presumptively involuntary. That broad argument is inconsistent with our limited holding in *Taylor*.

---

[1] On March 27, 2014, the State entered a *nolle prosequi* on the PDWBPP charge. The PFBPP charge was severed by the Superior Court on June 24, 2013.
[2] *Taylor v. State*, 23 A.3d 851, 855-56 (Del. 2011).

The record supports the Superior Court's conclusion that Braithwaite's statement, which was not self-incriminating, was the product of an uncoerced and voluntary decision to speak with the police. Therefore, the Superior Court properly admitted Braithwaite's statement into evidence under 11 *Del. C.* § 3507 ("Section 3507"). Accordingly, the Superior Court's judgment of convictions must be affirmed.

*Facts*

On March 12, 2011, BJ Merrell ("Merrell") shot Wyche in the head during a robbery. Wyche recovered and Merrell was never charged in the shooting. On August 30, 2012, Merell was hanging out in a park, playing dice and basketball with Michael Newkirk, Carlyle Braithwaite, and Michelle Newkirk, Merrell's girlfriend. Earlier that day, Wyche had driven up to Michael with a gun in his lap and told him that Michelle and Merrell had shot him and "they had to go." During the dice game, Wyche and Kevann McCasline arrived at the park in McCasline's car, and Wyche walked over to the group in camouflage shorts and a black t-shirt. Michael Newkirk testified that Wyche and Merrell began fighting and Wyche pulled out a gun. Michelle Newkirk testified that she saw Wyche shoot Merrell, which is consistent with her statement given to police at the scene of the shooting. Merrell died as a result of the gunshot wound. Wyche was apprehended near the

3

scene not long after the shooting. The police were not able to recover the weapon or any shell casings.

Immediately after the shooting, police tried to locate Braithwaite but were unable to find him until December 2012, when he was arrested on unrelated theft charges. After his arrest, Braithwaite was interviewed by police, who recorded it. His parents and his attorney were not present, and he was not read his *Miranda* rights before the interview. He was 17 years old at the time.

The interview lasted for about two hours, and the interviewing officer testified that he did not speak to Braithwaite about the shooting before the interview began. At the beginning of their conversation, Braithwaite noted that he was nervous about discussing the incident because he was worried about his mother and little brother and did not want anything to happen to them. He admitted that he had been hiding out from the police.

The interviewing officer did not push Braithwaite to speak or make threats. Instead, the officer said that the police would help if Braithwaite or his family was threatened. This seemed to put Braithwaite's concerns to rest, as he then offered, "I'm going to cooperate, don't get me wrong. . . . That's what I want though." The interviewing officer then asked Braithwaite to "tell [him] the story," and Braithwaite gave a detailed account of the August 30 shooting. He stated he was aware of the threat communicated to Michael by Wyche. He said that he was

4

worried when Wyche arrived at the park, and he wanted to leave. He stated that he saw Wyche approach Merrell, and after the two began talking, Wyche pulled out a gun and Merrell tried to hit him. Wyche then shot Merrell. Braithwaite also identified Wyche in a photographic line-up as the shooter.

At trial, the State secured Braithwaite's appearance with a material witness warrant. Braithwaite was uncooperative on the stand; he stated that he was unsure or had no memory of many of the statements he made to the police and that any statements he remembered were lies. The State then introduced his December 2012 statement into evidence under Section 3507, which allows the court to admit voluntary out-of-court statements as affirmative evidence.[3]

### Standard of Review

A trial court's ruling on the admissibility of a witness' out-of-court statement to an investigating police officer pursuant to Section 3507 is reviewed on

---

[3] Section 3507 provides:
  (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.
  (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.
  (c) This section shall not be construed to affect the rules concerning the admission of statements of defendants or of those who are codefendants in the same trial. This section shall also not apply to the statements of those whom to cross-examine would be to subject to possible self-incrimination.

appeal for an abuse of discretion.[4] Whether a witness voluntarily made his or her out-of-court statement is an issue of fact that must be supported by competent evidence. The trial judge's decision regarding the voluntariness of a Section 3507 statement is reversible only if that factual determination was clearly erroneous.[5]

### *Braithwaite's Statement Was Voluntary*

When the State intends to introduce a statement under Section 3507, "[t]he prosecutor must offer the statement before the conclusion of the declarant's direct examination and must demonstrate the voluntariness of the statement during direct examination. The trial judge must make a finding that the out-of-court statement was voluntary before allowing the jury to hear it."[6] Wyche contends that the Superior Court erred when it permitted the State to present Braithwaite's statement to the jury under Section 3507 because Braithwaite was not read his *Miranda* rights and, therefore, his statement was presumptively involuntary.

Because custodial interrogations have an inherently coercive quality, the absence of certain procedural safeguards, including *Miranda* warnings, can render a custodial statement by a Section 3507 witness involuntary but only under very limited circumstances.[7] Generally, however, Delaware courts take a "totality of the

---

[4] *Flonnory v. State*, 893 A.2d 507, 515 (Del. 2006); *Barnes v. State*, 858 A.2d 942, 944-45 (Del. 2004).
[5] *Turner v. State*, 5 A.3d 612, 613-15 (Del. 2010); *Martin v. State*, 433 A.2d 1025, 1032-33 (Del. 1981); *Flonnory*, 893 A.2d at 515.
[6] *Smith v. State*, 669 A.2d 1, 7 (Del. 1995).
[7] *Taylor*, 23 A.3d at 855-56.

circumstances" approach in determining whether the witness' "will was overborne" such that the proffered Section 3507 statement was not "the product of a rational intellect and a free will."[8] "A totality of the circumstances approach . . . requires the reviewing court to consider the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, and the characteristics of the defendant."[9] The factors that bear on these circumstances include:

> the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.[10]

Wyche relies upon *Taylor* in support of his argument that a witness statement made without *Miranda* warnings is presumptively involuntary. In *Taylor*, we held that under the circumstances of that case, an unwarned witness' statement implicating a defendant was not voluntary and thus could not be introduced into evidence under Section 3507 at the defendant's trial.[11] In *Taylor*, a homeless 26-year-old man, had witnessed a shooting for which the defendant was charged.[12] He was taken into custody and told that he was being arrested on a

---

[8] *State v. Rooks*, 401 A.2d 943, 949-50 (Del. 1979).
[9] *Baynard v. State*, 518 A.2d 682, 690 (Del. 1986) (citing *Rachlin v. United States*, 723 F.2d 1373, 1377 (8th Cir. 1983)) .
[10] *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).
[11] *Taylor*, 23 A.3d at 855-56.
[12] *Id.* at 853-54.

domestic violence charge.[13]  He was not read his *Miranda* rights.[14]  During interrogation, after the witness denied knowing who committed the crime, the police handcuffed him to the chair and falsely told him that he was under arrest for the shooting crime he had witnessed.[15]  The police also reminded the witness that he had young children to think about.[16]  The witness then began crying and yelling, and eventually gave a detailed account of the shooting, implicating the defendant.[17]  In *Taylor*, we held that "[w]here the procedural safeguards of *Miranda* are not followed for a witness who is *falsely told*, but actually believes, he is under arrest, constitutional consistency requires that any Section 3507 statement that incriminates a third party be in admissible as well."[18]

Wyche argues that the Superior Court erred by not reading our decision in *Taylor* as holding that *any* proffered Section 3507 statement by a witness in custody is presumptively involuntary and inadmissible unless *Miranda* warnings are given.  Such a reading would expand our purposely narrow holding in *Taylor*, which applied to the specific facts of that case: where a Section 3507 witness was falsely told he was under arrest for the very crime about which he gave the

---

[13] *Id.* at 854.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 855-56 (emphasis added).

unwarned statement sought to be introduced under Section 3507. That was not the situation presented in this appeal. We adhere to the limited holding in *Taylor*.

Although Braithwaite was not read his *Miranda* rights, he was not questioned about the theft charges for which he was properly under arrest at any point during the interview. Braithwaite understood that he was not a suspect in the August 30 shooting, and none of the statements that he made implicated him in any crime, much less that one. Although Braithwaite was young, the Superior Court found that he was not coerced by the police and that he cooperated willingly. The police did not deceive, threaten, or provoke Braithwaite. Once the interview began, Braithwaite spoke freely, at great length, and without encouragement.

The Superior Court correctly determined that Braithwaite's statement was not presumptively involuntary and that our narrow holding in *Taylor* does not control the outcome in this case. The Superior Court properly applied the totality of the circumstances test to the proffered Section 3507 statement by Braithwaite, which our decision in *Taylor* acknowledged was the general rule.[19] The factual record supports the Superior Court's conclusion under that test that Braithwaite's statement was a voluntary product of rational intellect and free will.[20] Therefore, the Superior Court did not abuse its discretion by admitting Braithwaite's statement under Section 3507 at Wyche's trial.

---

[19] *Id.* at 853.
[20] *See Martin*, 433 A.2d at 1032.

## *Conclusion*

The Superior Court's judgment of convictions is affirmed.