**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Lee KNIGHT, Michael Hampton, Tara Garrison, Henry Jeff Ragin, Richard Joseph, Jarrious Washington, Defendants–Appellants.**

No. 87–5031.

United States Court of Appeals, Eleventh Circuit.

March 15, 1989.

Michael H. Tarkoff, Flynn and Tarkoff, Miami, Fla., for Garrison.

Linda L. Carroll, P.A., Miami, Fla., for Hampton.

Harris Sperber, Sperber & Goldberg, P.A., Miami, Fla., for Ragin.

Roy E. Black, Black and Furci, Miami, Fla., for Joseph.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Eileen M. O'Connor, Sonia Escobio O'Donnell, Linda Collins Hertz, Asst. U.S. Attys., Ft. Lauderdale, Fla., for U.S.

Lee Weissenborn, Michael Lee Knight, Miami, Fla., for Washington.

Michael J. Doddo, Ft. Lauderdale, Fla., for Knight.

Before TJOFLAT and EDMONDSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Six appellants appeal convictions for various narcotics offenses, including conducting a continuing criminal enterprise (CCE), conspiracy to possess with intent to distribute heroin and cocaine, and possession with intent to distribute and distribution of heroin. We affirm.

The facts surrounding the investigation into Richard Joseph's drug organization are complex, involving more than fifteen people. The evidence presented at trial included videotaped heroin purchases, taped telephone conversations about cocaine and heroin, items seized from a "stash house," and testimony concerning "crack" processing and selling. Because all the facts do not bear on the issues addressed in this opinion, we will limit our discussion to those facts that have to do with the issues examined.

*Denial of Motion to Suppress*

Appellant Tara Garrison was arrested pursuant to an indictment charging her with various heroin violations. She was given her *Miranda* warnings at the time of her arrest and while being transported to the DEA office. Because Garrison was in the last trimester of pregnancy, the officers asked specifically about her health and comfort; and she was held, unhandcuffed, in a lunchroom area. Garrison was told a third time of her Miranda rights at the DEA office, and she signed a written waiver of those rights.

After Garrison signed the waiver, DEA Agent Mark Cutcliffe told her that he had

been authorized by the Assistant United States Attorney handling the case to offer her a plea agreement: the Government would allow Garrison to plead guilty to one count, dismissing the other charges, in exchange for Garrison's truthful cooperation and statement. Garrison accepted the offer and began answering Cutcliffe's questions. Based on other information Cutcliffe had, he suspected that Garrison was not answering his questions truthfully. After warning Garrison several times during the interview that he did not think she was being candid, Cutcliffe terminated the interview. The district court denied Garrison's motion to suppress the statements she made to Cutcliffe.

Garrison did not testify at the hearing on her motion to suppress but testified at trial that she was working as a "citizen undercover agent" on the two occasions when the government videotaped her distributing heroin. On cross-examination, the government referred to Garrison's post-arrest statement to impeach her. Garrison contends that (1) the statements were made during plea negotiations and were therefore inadmissible under Fed.R.Crim.P. 11(e)(6) and (2) her statements were involuntary because they were induced by the government's plea offer.

Federal Rule of Criminal Procedure 11(e)(6) provides, in relevant part, that

> [e]xcept as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussion:
>
> .    .    .    .    .
>
> (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

■ Assuming that Rule 11(e)(6) extends to statements made to law enforcement agents when they state they are acting

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa- tion.

with the express authority of the United States Attorney's office, we think that the policies of Rule 11(e)(6) would not be served by applying the rule under the circumstances of this case. This court has noted that suppressing the evidence of plea negotiations serves the policy of insuring a free dialogue "only when the accused and the government actually engage in plea negotiations: 'discussions in advance of the time for pleading *with a view to an agreement* whereby the defendant will enter a plea in the hope of receiving certain charge or sentence concessions.'" *United States v. Robertson,* 582 F.2d 1356, 1365 (5th Cir. 1978) (emphasis added) (citing ABA Project on Minimum Standards for Criminal Justice of Pleas of Guilty, Introduction at 3 (Approved Draft 1968)).

■ Garrison states in her brief that she accepted the agent's offer allowing her to plead guilty to a one-count indictment. Garrison brief at 9. When Garrison accepted the plea offer, her discussions with Cutcliffe were no longer with a view to an agreement; the negotiations had ended and a plea contract was formed.[1] Once a plea contract is formed, the policy behind Rule 11(e)(6)—to allow a defendant to freely negotiate without fear that statements will be used against him—is no longer applicable. *See United States v. Davis,* 617 F.2d 677, 685 (D.C.Cir.1979) ("Excluding testimony made after—and pursuant to—the agreement would not serve the purpose of encouraging compromise"); *United States v. Stirling,* 571 F.2d 708 (2d Cir.1978) (when defendant voluntarily negotiated plea agreement, voluntarily appeared before grand jury pursuant to agreement and then voluntarily violated agreement, government's introduction of grand jury testimony at trial did not undermine confidence and candor needed for plea negotiations);

*see also United States v. Rutkowsi,* 814 F.2d 594, 599 (11th Cir.1987) ("[I]f Congress wished for Rule 11(e)(6) to sweep more broadly Congress would have so provided."). The point of plea negotiations had passed once Garrison accepted the plea offer. Exclusion of statements made once that point is passed would not serve the policy underlying Rule 11(e)(6), and the rule of exclusion therefore no longer applies.

■ The Supreme Court has never held that statements that are the product of an otherwise valid plea bargain are involuntary. And we follow *United States v. Davis,* 617 F.2d 677, 686 (D.C.Cir.1979), holding that a statement is not involuntary merely because it was made pursuant to a plea bargain. Courts must examine, on a case-by-case basis, whether the defendant voluntarily entered the plea agreement and whether the statements made pursuant to the agreement were made voluntarily. *Id.* at 685–87.

Here, Garrison was repeatedly advised of her constitutional rights, and she executed a document acknowledging her understanding of those rights and her desire to waive them. She was treated with the utmost care and every reasonable attempt was made to ensure her comfort and well-being.[2] By entering into the agreement freely, Garrison sought dismissal of some of the charges against her. The government's promise of dismissal—a promise permitted and encouraged in the plea-bargaining process—was a bargained-for term of the agreement, not an overbearing or improper inducement. *See id.* at 687. Although Garrison's statements were given in exchange for the government's promise, we cannot say under the circumstances of this case that Agent Cutcliffe's statements were such that they rendered Garrison's statements involuntary. Garrison wanted

---

1. Appellant's argument that *United States v. Geders,* 566 F.2d 1227 (5th Cir.1978), *vacated in part on rehearing,* 585 F.2d 1303 (1978), mandates reversal here is without merit. *Geders* held that plea bargaining had commenced and that the statements defendant made were therefore inadmissible, even for impeachment purposes. *Id.* at 1232 & n. 13. In this case the bargain had been struck and the negotiation

process had ended, making Rule 11(e)(6) inapplicable.

2. Perhaps the written words of Garrison are the most telling description of the voluntariness of the statement: "I feel okay. I'm nervous and frighten [sic]. I have some college education. I'm rested and not hungry. I've been treated good. I have taken no drugs." R29:200.

to make the statement to effectuate the agreement. We therefore hold that Garrison's acceptance of the plea offer and her statements made pursuant to that offer were voluntary and that the district court correctly denied the motion to suppress.[3]

*Brady Material Disclosed During Trial*

Government witness Tammy Dennis concluded her testimony on Friday, October 24, 1986. Defense counsel had requested that the court examine, *in camera*, the transcripts of Dennis' grand jury testimony given in Jacksonville in May and July 1985 in an unrelated matter. On Monday, October 27, 1986, defense counsel were provided with the transcripts, which made it clear that Dennis had not told the truth before the Jacksonville grand jury.[4]

Dennis was recalled to the stand in this case on October 29, and the government conducted re-direct examination. Appellant Joseph's counsel cross-examined Dennis using the grand jury testimony to uncover inconsistencies in her earlier trial testimony and her false testimony before the grand jury. Joseph's counsel declined the trial judge's offer for more cross-examination after an overnight recess. The following day, counsel for Washington, Knight, Hampton and Ragin declined to recross-examine Dennis. Counsel for Garrison, however, conducted a vigorous cross-examination, and counsel for Joseph and Garrison both questioned Garrison yet again, stressing that Dennis had previously testified falsely.

■■■ "To establish a *Brady* violation, appellant must show: (1) the prosecution suppressed evidence; (2) such evidence was favorable to the appellant or exculpatory; and (3) the evidence was material. Evidence is 'material' ... 'if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Stewart*, 820 F.2d 370, 374 (11th Cir.1987). (citations omitted) (quoting *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (plurality)).

The typical *Brady* claim involves "'the discovery, *after* trial of information which had been known to the prosecution but unknown to the defense.'" *United States v. Kubiak*, 704 F.2d 1545, 1549 (11th Cir. 1983) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)). Here the *Brady* claim involves mere delay in the transmission of the material to the defense and "not outright omission that remained undiscovered until after trial." *Id.* Appellants received the information during the trial and have failed to demonstrate that the disclosure came so late that it could not be effectively used; and thus they cannot show prejudice. *See United States v. Darwin*, 757 F.2d 1193, 1201 (11th Cir.1985). Defense counsel were given the opportunity to decide when they wanted Dennis brought back, and they had ample opportunity while in possession of the grand jury transcripts to prepare for the witness. The jury heard Dennis' credibility challenged; her lack of truthfulness was stressed in aggressive cross-examination by defense counsel. Even if the disclosure should have come sooner, any possible prejudice was cured during trial.[5]

---

3. Although we find no error in the proceedings below, we note that the limited use of Garrison's statements during Garrison's cross-examination would have rendered any error harmless in light of the overwhelming evidence of guilt: two videotapes of Garrison delivering heroin to undercover detectives, two taped telephone conversations where Garrison quoted the price of heroin, testimony by both the undercover agent and a confidential informant, and the exhibits of the heroin delivered by Garrison. *See Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986) (where reviewing court can find that record developed at trial establishes guilt beyond reasonable doubt, interest in fair-

ness has been satisfied and judgment should be affirmed).

4. In May 1985 Dennis denied any involvement with drugs or her convicted husband's drug business. In July 1985 she admitted packaging marijuana with one of her husband's drug people and testified about a cocaine transaction.

5. Appellants' argument that they were denied effective cross-examination is also without merit. Appellants argue that the trial judge deprived them of effective cross-examination by permitting the witness to read the grand jury transcripts before testifying and by permitting

██ We note appellants' claim at oral argument that the prosecutor failed to correct testimony by Dennis that the prosecutor knew was false. The first time Dennis testified at trial, she falsely stated that she had not invoked the fifth amendment protection against self-incrimination at the grand jury proceeding in Jacksonville. The prosecution possessed the transcript of Dennis' grand jury testimony, but failed to correct Dennis' false statement. Defense counsel later impeached Dennis, using her grand jury testimony, which revealed that she had indeed invoked the fifth amendment protection at the earlier grand jury proceeding. We have stated that the prosecutor's failure to correct a witness' false testimony will secure a reversal where, the "estimate of the truthfulness and reliability of the given witness may well be determinative of guilt or innocence." *United States v. Cole*, 755 F.2d 748, 763 (11th Cir.1985). Without deciding whether the truthfulness and reliability of witness Tammy Dennis may have been determinative of guilt or innocence, we hold that the prosecutorial error in the case does not warrant a reversal. Defense counsel brought Dennis' false testimony before the jury when she was returned to the trial to testify the second time. We are unconvinced that the false statement made when Dennis first testified could have affected the jury's decision where Dennis was called back and her false statement exposed before the jury. We conclude therefore that the prosecutor's failure to correct Dennis' false testimony initially, while troubling, does not warrant a new trial. *Cf. United States v.*

*Rivera Pedin*, 861 F.2d 1522 (11th Cir. 1988) (granting new trial because *had jury known* the truth about false testimony, it may have reached different decision).

None of the claims advanced by appellants warrant reversing their convictions.[6] Accordingly, the appellants' convictions are AFFIRMED.

---

the government to conduct a second direct examination of Dennis before defense counsel had an opportunity to impeach. The judge, appellants say, precluded the defense from surprising the witness and "catching her off guard." The confrontation clause guarantees only "'an *opportunity* for cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987)). We know of no prohibition forbidding witnesses from reviewing a prior statement before testifying. The court controls the mode of interrogations and the presentation of witnesses; it was within the court's discretion to permit the government to

call Dennis for re-direct examination. *See* Fed. R.Evid. 611(a). The court's control over the presentation of evidence is to assure the "ascertainment of the truth" and not to surprise a witness or "catch the witness off guard." *Id.* The remedial measures used by the trial court in this case did not deprive the defendants of effective cross-examination; defendants had the opportunity to bring out Dennis' supposed perjury. A review of the record shows that the impeachment material was indeed effectively used.

6. We conclude that the other claims raised by appellants are meritless, although we do not discuss them in this opinion.