12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hazel LITTLE, Jim L. Townsend, Defendants-Appellants.
 Nos. 92-6719, 92-6720 and 92-6721.
 United States Court of Appeals, Sixth Circuit.
 Dec. 6, 1993.
 
 Before: GUY and RYAN, Circuit Judges; and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendants James Townsend and Hazel Little appeal their jury convictions for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Townsend argues that (1) his confession was involuntary; (2) his confession should have been suppressed under Fed.R.Crim.P. 11(e)(6); and (3) he was denied a fair trial. He also appeals his sentence of life imprisonment without parole, contending that his sentence was improperly enhanced by his prior state court convictions. Little assigns prejudicial error to the district judge's (1) denial of her severance motion; (2) exclusion of evidence relating to an independent criminal investigation; (3) refusal to order the production of certain notes pursuant to the Jencks Act, 18 U.S.C. Sec. 3500; and (4) refusal to give the jury an instruction for a lesser-included offense. Little also challenges the sufficiency of the evidence supporting her conviction. Finding the defendants' arguments unpersuasive, we affirm.
 
 I.
 
 2
 In September 1987, Townsend was contacted by Bernice Turner about the possibility of purchasing a kilogram of cocaine. Townsend agreed to make the sale, and he and Turner arranged to meet at a convenience store near Turner's home. Turner arrived at the store at the arranged time, but Hazel Little arrived in Townsend's place, driving a red Jeep registered in Townsend's wife's name. Little and Turner then proceeded to Turner's home, where Little gave Turner a one-kilogram package of cocaine. They agreed that Turner would pay Little $29,000 when Turner was paid by her own cocaine buyers. Little then left. Little's arrival and departure were witnessed by Officer David McGriff of the Shelby County District Attorney's Office from a surveillance van parked 200 feet from Turner's home. At this time, however, McGriff had not yet been able to set up his videotaping equipment.
 
 
 3
 Turner immediately called her cocaine buyers after Little's departure and they promptly arrived at her home. One of these "buyers," however, was DEA Agent Richard Swain, who placed Turner under arrest. Turner agreed to cooperate with Swain and the two other DEA agents present, and made a recorded phone call to Little, during which she stated that the $29,000 was ready. The agents in fact had brought $29,000 in a Crown Royal Whiskey bag. After Turner hung up, the agents hid themselves to observe Little's return.
 
 
 4
 Little arrived and was given the money in the Crown Royal bag. She then left Turner's home and was arrested by Lieutenant Mitch Donovan of the Shelby County Sheriff's Department as she drove away. In the Jeep, Donovan found a loaded .38 caliber revolver, several documents in Townsend's name, and the Crown Royal bag containing the $29,000. Little's second arrival and departure and her arrest were videotaped by Officer McGriff.
 
 
 5
 Independent of the Turner-Little sting, Special Agent Corbett Hart of the FBI was at that time conducting an investigation of Townsend's activities. By October 1990, Hart believed that the FBI "had sufficient [inculpatory] material in hand to approach Mr. Townsend to see if he would cooperate in some other cases we were looking at." Hart therefore prepared an affidavit for a search warrant of Townsend's home. Hart, however, decided to approach Townsend before he applied for the warrant, because any public record of a warrant could have jeopardized Townsend's future participation in undercover FBI activities.
 
 
 6
 Hart and other officers arrived at Townsend's home the morning of October 23, 1990. There, they asked Townsend for his cooperation in other FBI investigations. The parties agree that the officers were extremely cordial to the Townsends throughout their encounter. Hart, however, told Townsend that if he did not cooperate, he would suffer the following consequences: (1) he would be arrested and the government would oppose his bail request; (2) the government would press for the longest sentence possible, which might be life imprisonment; (3) Hart would get a search warrant for his house; (4) his wife would be arrested, as the agents believed they had substantial evidence of her own illegal activities; and (5) his young daughter would be taken to juvenile court, as both of her parents would be in jail.
 
 
 7
 Hart further told Townsend that if he chose to cooperate, he would enjoy the following benefits: (1) he would not be arrested then, but rather at some future time; (2) his wife would not be arrested at all; (3) his daughter would not have to be taken to juvenile court; and (4) the government would file a cooperation statement on his behalf, which might reduce his sentence to ten years. The district court found that Townsend was given the opportunity to call an attorney, but was told that "all deals were off" if he did so. Townsend did not call an attorney.
 
 
 8
 Townsend expressed reluctance to cooperate and was allowed to confer alone with his wife. She told him that Hart was "full of it," and vigorously argued that he should refuse to cooperate. Hart also allowed Townsend to read the affidavit he had prepared, which detailed the FBI's evidence of Townsend's drug trafficking.
 
 
 9
 Townsend's reservations persisted, however, and he asked to speak with Timothy DiScenza, the Assistant United States Attorney assigned to this investigation. Arrangements were made for Townsend and DiScenza to meet in the parking lot of a nearby Shoney's restaurant. During this meeting, which lasted about twenty minutes, DiScenza essentially reiterated what Hart had told Townsend earlier. DiScenza then left and Townsend returned to his home with Hart.
 
 
 10
 Townsend then agreed to cooperate with Hart. He signed a consent to search form and said that he wished to give a statement. The district court found that Townsend was given Miranda warnings before he gave his statement. Townsend made an eight-page statement to Hart, which detailed his extensive drug trafficking activities over the prior several years. Meanwhile, the other officers searched his home.
 
 
 11
 Consistent with their agreement with the authorities, neither Townsend nor his wife were arrested that day. Seven months later, however, Townsend apparently refused to continue to cooperate, and he consequently was indicted along with Little.
 
 
 12
 Before trial, Townsend filed a motion to suppress both his statement and the evidence seized during the search. Little filed a motion for a separate trial. The district judge denied these motions. The trial proceeded, and the jury found Townsend and Little guilty on both counts. Both defendants then filed motions for judgment of acquittal or a new trial. These motions were denied. The district judge then sentenced Little, and sentenced Townsend after holding an evidentiary hearing concerning his prior state court convictions.
 
 
 13
 These appeals followed. The defendants each have adopted the arguments set forth in the brief of the other, pursuant to Fed.R.App. 28(i). For simplicity, however, we address each defendant's arguments separately.
 
 II.
 
 14
 Townsend's most substantial arguments concern the admissibility of his confession to Agent Hart. First, Townsend argues that his confession related to "plea discussions" and thus should have been suppressed under Fed.R.Crim.P. 11(e)(6). This rule provides for the inadmissibility of "any statement made in the course of plea discussions with an attorney for the government...." That Townsend made his statement to Agent Hart and not to Assistant United States Attorney DiScenza does not render Rule 11 inapposite here, as Hart was acting with the express authority of DiScenza after DiScenza left the meeting with Townsend. United States v. Serna, 799 F.2d 842, 849 (2d Cir.1986), cert. denied, 481 U.S. 1013 (1987).
 
 
 15
 The district court found that the Hart-Townsend discussions were plea discussions, and we review this finding of fact under the clearly erroneous standard. United States v. Aponte-Suarez, 905 F.2d 483, 493 (1st Cir.), cert. denied, 498 U.S. 990 (1990). In doing so, we adopt the test set forth in United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc):
 
 
 16
 [The court] must apply a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.
 
 
 17
 This test has been widely followed. See, e.g., United States v. Grant, 622 F.2d 308, 312 (8th Cir.1980); United States v. Pantohan, 602 F.2d 855, 857 (9th Cir.1979); United States v. Swidan, 689 F.Supp. 726, 728 (E.D.Mich.1988). We agree that "[t]his analysis protects the plea discussion process by preserving the accused's subjective expectations, while at the same time limiting self-serving, post hoc statements by the accused." Swidan, 689 F.Supp. at 728.
 
 
 18
 Here, Townsend and Hart negotiated an agreement of some kind on the day of the visit to his home. This agreement provided that the government would seek a sentence of only ten years for Townsend. Implicit from this promise was Townsend's return promise to plead guilty when he was charged. This agreement hence is properly understood as a plea agreement. That Townsend had not yet been arrested or indicted at the time of the agreement does not preclude this finding, as these events are not prerequisites to "an offer to plead guilty upon condition." United States v. Levy, 578 F.2d 896, 901 (2nd Cir.1978).
 
 
 19
 This finding is consistent with the holding of United States v. Sikora, 635 F.2d 1175, 1175-76 (6th Cir.), cert. denied, 449 U.S. 993 (1980). There, DEA agents told Sikora that it was in his best interest to cooperate with the DEA and that he faced a severe sentence if he did not cooperate. Sikora then made a statement which he later sought to suppress under Rule 11. We found Rule 11 to be inapplicable, as Sikora had not offered to plead guilty. Unlike the instant case, there was no agreement about a prison term of any specific length and thus no implied promise to plead guilty.
 
 
 20
 That the Hart-Townsend discussions were plea discussions does not resolve our Rule 11(e)(6) issue, as the district court explicitly found that Townsend did not confess until after he had accepted Hart's plea agreement offer. At that time, plea discussions had ended and a plea agreement had been formed. Rule 11(e)(6), however, protects only statements made "in the course of plea discussions...." Because we are constrained to give effect to this plain and unambiguous language, United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242 (1989), we hold that Rule 11(e)(6) does not protect statements made after plea negotiations have concluded. Accord United States v. Knight, 867 F.2d 1285, 1288 (11th Cir.), cert. denied, 493 U.S. 846 (1989); United States v. Stirling, 571 F.2d 708, 731 (2nd Cir.), cert. denied, 438 U.S. 824 (1978).
 
 
 21
 Townsend also argues that his confession should have been suppressed because it was involuntary. The district court found that Townsend's statement was voluntary and that the actions of the officers at Townsend's home "were appropriate under the circumstances." We review the district court's findings concerning the circumstances of the statement for clear error, but independently determine how the accused reacted to events and the legal significance of how he reacted. United States v. Wrice, 954 F.2d 406, 410-11 (6th Cir.1992).
 
 
 22
 In McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989), we set forth the test for the voluntariness of a confession:
 
 
 23
 Threshold to the determination that a confession was "involuntary" for due process purposes is the requirement that the police "extorted [the confession] from the accused by means of coercive activity." Once it is established that the police activity was objectively coercive, it is necessary to examine [the defendant's] subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. Finally, [the defendant] must prove that his will was overborne because of the coercive police activity in question.
 
 
 24
 (Citations omitted.)
 
 
 25
 Townsend argues that the various "threats" and the offer of leniency made by Hart at his house amounted to police coercion. We disagree. The "threats" amounted to little more than an objective and dispassionate statement of the consequences of Townsend's decision. To characterize Hart's statement as "coercive" would be to blame Hart, not Townsend, for the difficulties facing Townsend as a result of his drug trafficking activities.
 
 
 26
 Hart's offer of a relatively lenient ten-year sentence presents a closer question. It is well settled that offers of leniency made in the course of police interrogations can sometimes have a coercive effect. See, e.g., Williams v. Withrow, 944 F.2d 284, 289 (6th Cir.1991), rev'd on other grounds, 113 S.Ct. 1745 (1993). Here, however, the offer of leniency was made in the course of plea discussions. In rejecting an argument identical to that presented by Townsend, the District of Columbia Circuit observed that this difference in context is material:
 
 
 27
 If accepted, [defendant's] argument in effect would create a rule that testimony or information given pursuant to a plea bargain is involuntary per se, for a defendant's execution of his part of a bargain is always "induced" by the prosecution's return promises. Such a rule would be overbroad and unwarranted.... The logic of [defendant's] approach not only would create a rule of per se involuntariness for statements made pursuant to a bargain but also would render involuntary the pleas themselves, which also derive from the Government's promises.
 
 
 28
 United States v. Davis, 617 F.2d 677, 686 (1979), cert. denied, 445 U.S. 967 (1980).
 
 
 29
 The conduct of the officers at Townsend's home is strikingly similar to that of the agents in United States v. Guarno, 819 F.2d 28 (2d Cir.1987). There, the agents and Guarno met in a motel room. The agents revealed to Guarno the very extensive evidence of his illegal activity and told him that he faced 15 years' imprisonment if charged. They promised, however, to allow him to plead guilty to a lesser charge if he cooperated with their investigations of other individuals. Although they were courteous and not hostile towards Guarno, they stated they would not be interested in his cooperation if he spoke to a lawyer. Guarno agreed to their offer and made a statement, which he later sought to suppress. Id. at 30. The court noted that "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials" and held that Guarno's confession was not coerced. Id. at 31.
 
 
 30
 We find no material difference between Townsend's case and the facts of Guarno. Admittedly, Townsend's decision had implications for his wife and child, which was not true for Guarno. Those implications, however, were a consequence not of police misconduct but of the criminal activity of Townsend and his wife. Moreover, the officers at Townsend's home gave him the opportunity to see the full extent of the evidence against him and to confer alone with a trusted and forceful advisor--his wife. Guarno had no such opportunities. Also, Townsend was given Miranda warnings, while Guarno was not. Finally, no admissions were made by Townsend until after he talked with Assistant United States Attorney DiScenza.
 
 
 31
 Townsend presents an array of other arguments that do not merit extended consideration. First, Townsend asserts that Agent Hart perjured himself during the evidentiary hearing for the pretrial motion to suppress, and that this "perjury" is "outrageous" government conduct which mandates reversal of Townsend's conviction. We disagree. Hart did in fact incorrectly testify at the suppression hearing that he had a judicially signed search warrant when he arrived at Townsend's home. This error was discovered before Townsend's trial began, however. The government maintains that Hart was simply mistaken when he gave this testimony, and points out that the mistaken testimony was given a full year after the incident took place. Additionally, neither evidence seized in the search of Townsend's home nor fruits thereof were presented at trial.
 
 
 32
 Townsend also argues that the government's closing argument was so prejudicial as to require reversal. In his closing argument, DiScenza tried to bolster Hart's credibility and called defense counsel "lawyers for dope dealers." Because defense counsel made no contemporaneous objection to DiScenza's remarks, we must determine whether these remarks constituted "plain error." Fed.R.Crim.P. 52(b); United States v. Young, 470 U.S. 1, 15 (1985). The Young court stated that "the plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " 470 U.S. at 15 (quoting United States v. Frady, 456 U.S. 152, 163 n. 14 (1982)). Such circumstances clearly are not present here. Townsend's counsel had made the alleged perjury of Hart the central theme of Townsend's defense, and thus DiScenza's defense of Hart's credibility, while not to be commended, was nonetheless a nonprejudicial "invited response." See Young, 470 U.S. at 12. DiScenza's personal attack upon defense counsel, although reprehensible, did not result in a miscarriage of justice.
 
 
 33
 Townsend further argues that the district judge's comments and actions during the course of the trial were "extremely prejudicial" to Townsend's right to a fair trial. Townsend points to various unfavorable rulings and a number of instances where the district judge told defense counsel to "move along" or stated that a particular question was improper. We find that none of these actions or comments exceeded the district judge's broad discretion under Fed.R.Evid. 611.
 
 
 34
 Townsend's final argument concerning his conviction is that the various "errors" to which he points cumulatively denied him his right to a fair trial even if they are considered harmless in isolation. See United States v. Parker, 997 F.2d 219, 221 (6th Cir.1993). We reject this argument, because the "errors" to which Townsend points were not harmless errors; rather, they were not errors at all.
 
 
 35
 Townsend argues that his sentence should be reduced because the government should have been compelled to file a motion for downward departure under section 5K1.1 of the United States Sentencing Guidelines. We reject this argument, since it is well settled in this circuit that the courts will not second guess the government's decision not to file a section 5K1.1 motion. See, e.g., United States v. Levy, 904 F.2d 1026, 1035 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991).
 
 
 36
 Finally, Townsend argues that his sentence was improperly enhanced under the Sentencing Guidelines by two prior state court convictions entered September 4, 1980, and November 8, 1983. These convictions were based on guilty pleas entered by Townsend, and he was represented by counsel on both occasions. Prior to his sentencing hearing, Townsend asserted that these convictions were constitutionally invalid because his pleas were entered while he was addicted to crack cocaine and thus were entered involuntarily.
 
 
 37
 The district judge entertained Townsend's challenge to these convictions and held an evidentiary hearing. Townsend bore the burden of proving the unconstitutionality of his prior convictions. United States v. Sammons, 918 F.2d 592, 604 (6th Cir.1990), cert. denied, 114 S.Ct. 126 (1993). Townsend's evidence of the involuntariness of his pleas consisted of his naked testimony that his judgment was impaired by crack cocaine at the time he entered each plea. The attorneys who represented Townsend on those occasions were not called to testify. The government, on the other hand, presented testimony by Agent Hart that crack cocaine was not available "on the street" before 1985 at the earliest.
 
 
 38
 The district judge held that Townsend had not carried his burden, and we agree. Townsend's testimony during the evidentiary hearing was selfserving, uncorroborated, and inconsistent with objectively verifiable facts.
 
 III.
 
 39
 Hazel Little presents a number of arguments in support of her contention that her conviction should be reversed. First, Little notes that she was involved in only one of the three cocaine distribution conspiracies in which Townsend was found to have been involved; thus, she asserts that the denial of her motion for a separate trial was prejudicial error.
 
 
 40
 The denial of a severance motion is reversible only for an abuse of discretion. United States v. Franks, 511 F.2d 25, 30 (6th Cir.), cert. denied, 422 U.S. 1042 (1975). In reviewing the denial of Little's motion, we first observe that their joint indictment was proper as they were alleged to have participated in a common illegal transaction. See Fed.R.Crim.P. 8(b). Generally, persons indicted together should be tried together; without a showing of compelling prejudice, a severance motion should not be granted. United States v. Moreno, 933 F.2d 362, 369 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). Little made no such showing here. That she was only a "mule" in Townsend's larger distribution network does not amount to compelling prejudice, since "[a] defendant is not entitled to severance because the proof is greater against a co-defendant." United States v. Warner, 955 F.2d 441, 448 (6th Cir.), cert. denied, 112 S.Ct. 3050 (1992). The district judge thus was correct to deny Little's severance motion.
 
 
 41
 Little argues next that the evidence presented against her was insufficient to support her convictions. Here, we only need determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime[s] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). At trial, the government presented overwhelming direct and circumstantial evidence of Little's guilt. This evidence included the testimony of numerous witnesses, audiotapes, a videotape, and incriminating documents. This evidence was more than sufficient to support Little's convictions.
 
 
 42
 Little further argues that the district judge's replacement of black juror Willie Carr with a white alternate juror was prejudicial error. We have held that "the substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." United States v. Warren, 973 F.2d 1304, 1308-09 (6th Cir.1992). Early in the trial, Little 's counsel first notified the judge that Carr had been sleeping during the proceedings. Shortly thereafter, a black juror complained to the judge on behalf of the other jurors about Carr's sleeping and snoring. The judge then warned Carr to pay attention. When Carr continued to doze, he was replaced by the alternate juror. Clearly, reasonable cause existed for Carr's removal.
 
 
 43
 Little also argues that she was unfairly prejudiced by the district judge's refusal to allow her to introduce evidence relating to the Memphis United States Attorney's then-ongoing investigation of Congressman Harold Ford. Little was Ford's secretary for three years, and she sought to show that her prosecution was the product of a "vendetta" created by her refusal to cooperate with the investigation of Ford.
 
 
 44
 A district judge's evidentiary rulings concerning relevancy will be upheld absent an abuse of discretion. United States v. Blankenship, 870 F.2d 326, 328 (6th Cir.1988), cert. denied, 489 U.S. 1068 (1989). Here, the evidence in question was both irrelevant and highly prejudicial. The investigation of Ford had received extensive coverage in the press; the introduction of the evidence in question easily could have inflamed the jury and led it to consider issues not properly before it. The evidence therefore was excludable under Fed.R.Evid. 401 and 403.
 
 
 45
 Little's next argument relates to the Jencks Act, 18 U.S.C. Sec. 3500. At trial, Agent Hart testified on direct examination about his recollection of statements made by Bernice Turner during his interview of her after she was arrested. In the course of his direct testimony, Hart mentioned that he had taken notes of this interview. During his cross-examination of Hart, Little's counsel sought to review these notes on Jencks Act grounds. The district judge denied this request after reviewing the notes, and Little now asserts that this denial was prejudicial error.
 
 
 46
 We review the district court's denial of a defendant's Jencks Act motion under the clearly erroneous standard. United States v. Arnold, 890 F.2d 825, 830 (6th Cir.1989). The Jencks Act states, in relevant part:
 
 
 47
 After a witness called by the Unites States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the Unites States which relates to the subject matter as to which the witness has testified.
 
 
 48
 18 U.S.C. Sec. 3500(b). Here, Hart testified as to the fact of his making the notes but not as to their content; his testimony about Turner's statements during the interview related to his recollection of the interview and not to what his notes contained. The contents of the notes thus did not relate to Hart's testimony, and the notes consequently were not Jencks material.
 
 
 49
 Little also argues the Hart notes were Jencks material because Bernice Turner testified for the prosecution. The Jencks Act provides that a written statement that is "adopted" by a government witness is subject to production upon request by the defendant. See 18 U.S.C. Sec. 3500(b), (e)(1); United States v. Padin, 787 F.2d 1071, 1077 (6th Cir.), cert. denied, 479 U.S. 823 (1986). Little does not and apparently cannot maintain that Turner in fact "adopted" Hart's notes. Rather, she contends that she could have gotten Turner to adopt the notes at trial if she had been given the opportunity to do so. This argument finds support in neither precedent nor reason. The adoption rule exists for the benefit of government witnesses, not defendants, and grows out of the recognition that "it would be 'grossly unfair to allow the defense to use statements to impeach a witness which could not be said to be the witness' own rather than the product of an investigator's selections, interpretations, and interpolations.' " United States v. Nathan, 816 F.2d 230, 236 (6th Cir.1987) (quoting Palermo v. United States, 360 U.S. 343, 350 (1959)). Given this rationale, it would serve no purpose to allow a defendant to badger a witness into adopting a writing for the first time at trial, in order to somehow impeach that witness with that writing. The district judge was correct to deny Little's Jencks Act request.
 
 
 50
 Little's final argument is that she was entitled to a jury instruction for the lesser included offense of simple possession of cocaine. A defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). Here, the government's evidence showed that Little and Townsend had exchanged enormous quantities of cocaine for very large sums of money. This evidence afforded the rational jury only two choices: disbelieve the evidence, or convict the defendant(s) of possession with intent to distribute cocaine. For the rational jury, there was no middle ground. The district judge therefore was correct to not give the jury a simple possession instruction.
 
 
 51
 AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, United States District Court for the Western District of Michigan, sitting by designation