**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodney LLOYD, Defendant–Appellant.**

**No. 94–1343.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Dec. 27, 1994.

1184

Jennifer J. Finley, St. Louis, MO, argued (Tod M. Urban, Chicago, IL, on brief), for appellant.

Kandice A. Wilcox, Asst. U.S. Atty., argued, Cedar Rapids, IA, for appellee.

Before BOWMAN, MAGILL, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Rodney Lloyd was convicted of various drug-related charges and sentenced to 324 months of imprisonment. On appeal, Lloyd contends that the district court[1] erred in admitting at trial and at sentencing certain statements he made to law enforcement officers, which he argues were made pursuant to plea negotiations. Lloyd also asserts that the district court erroneously added several points to his criminal history score in determining his sentence. Finding no error, we affirm.

## I. BACKGROUND

Kim Spates, a confidential informant who was working with the Waterloo, Iowa, Area Federal Drug Task Force, made controlled purchases from Rodney Lloyd on the following dates in 1992: January 21, January 26, February 14, and February 21. On each occasion, prior to meeting with Lloyd, Spates was searched by law enforcement officers, provided with United States currency, of which the serial numbers had been recorded, and outfitted with a wireless body transmitter. The substances Spates purchased from Lloyd were later tested at the Iowa Department of Criminal Investigation laboratory and positively identified as cocaine base or "crack."

1. The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

On February 21, 1992, Special Agent Dwight Wright of the Iowa Division of Narcotics Enforcement accompanied Spates to make a crack purchase from Lloyd. Wright and Spates each negotiated with Lloyd to purchase one ounce of crack and provided him with a total of $2,300 for the purchases. Vanessa King, a third party, later delivered the crack to Wright and Spates.[2]

Lloyd was arrested at the Waterloo, Iowa, airport on February 24, 1992. Airport personnel contacted the police after Lloyd refused to provide identification before boarding a flight to Chicago. Officers Larry Johnson and Terry Slickers of the Waterloo Police Department spoke with Lloyd in the airport terminal, and Officer Johnson requested permission to search him. Lloyd consented to the search but asked that it take place outside of the airport terminal. Upon exiting the building, Lloyd began to run and momentarily escaped. He was later discovered in a garbage dumpster a short distance from the airport. Subsequent searches of Lloyd's person, a jacket he dropped while he was running, and the vehicle he drove to the airport uncovered $16,167 in cash. Approximately $2,000 discovered in the vehicle was identified as currency used by Spates and Wright in their transactions with Lloyd on February 21, 1992.

Lloyd was offered a proposed plea agreement prepared by the United States Attorney's Office for the Northern District of Iowa that same day (February 24, 1992). The agreement required Lloyd to assist authorities in the Northern District of Iowa with the investigation of drug trafficking, including divulging detailed information concerning his personal involvement in the drug trade. The agreement also stated that if Lloyd reneged or breached its terms, "no statements or other information provided by the defendant shall be precluded from use against the defendant in any proceeding." (Gov't's Addend. at 12.) After consulting with an attorney, Lloyd signed the agreement and began providing information. Lloyd gave additional information the following day, February 25, 1994. Lloyd told investigators that, among other things, he and several associates from Chicago had brought quarter-kilogram quantities of crack to the Waterloo area on approximately 12 different occasions for local distribution. Lloyd identified his crack suppliers, as well as several other cohorts who were involved in the transportation and distribution of cocaine in the Waterloo, Iowa, area. Several days later, Lloyd withdrew from the plea agreement. Lloyd entered into a second plea agreement with the government on January 7, 1993; however, he later withdrew from the second agreement as well.

Lloyd was charged in a six-count superseding indictment filed on June 23, 1992.[3] Prior to trial, Lloyd filed a motion in limine seeking to exclude statements that he made to law enforcement officers on February 24–25, 1992, pursuant to the first plea agreement. The district court denied Lloyd's motion, and at trial the government offered testimony concerning statements Lloyd made to investigators after signing the first plea agreement. A jury found Lloyd guilty on all of the charges and determined that he should forfeit $16,167. At sentencing, the district court determined Lloyd's criminal history score to be 7, putting him in category IV, with an offense level of 38 resulting in a sentencing range of 324–405 months. The court then sentenced Lloyd at the bottom of the identified range to 324 months of imprisonment, 5 years' supervised release, and ordered him to pay restitution of $6,300. Lloyd appeals.

## II. DISCUSSION

### A. Admission of Statements Made Pursuant to Plea Agreement

■ Lloyd first argues that the district court erred in admitting testimony at trial

---

2. King was charged with distribution of cocaine base, possession with intent to distribute cocaine base, and aiding and abetting the distribution and possession with intent to distribute cocaine base. She was acquitted of the charges in December of 1992.

3. Counts 1–4 charged Lloyd with distribution and possession with intent to distribute cocaine base on January 21, January 26, February 14, and February 21, 1992. Count 5 charged him with conspiracy to distribute and possession with intent to distribute cocaine and cocaine base. Count 6 sought forfeiture of property Lloyd allegedly obtained with the proceeds of his drug transactions.

regarding the statements he made to law enforcement officers during interviews on February 24–25, 1992. He contends that these statements were made in the course of plea negotiations and therefore should have been excluded under Federal Rule of Criminal Procedure 11(e)(6)(D). Federal Rule of Criminal Procedure 11(e)(6) provides in pertinent part:

> [E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> > (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

The determination of whether statements made by an accused were in the course of plea negotiations must be done on a case-by-case basis, examining the totality of the surrounding circumstances. *United States v. Grant,* 622 F.2d 308, 312 (8th Cir.1980). In the present case, the district court held that the statements were made after the plea agreement had been entered into between the parties and therefore Rule 11(e)(6)(D) did not preclude the admission of this evidence. We review the district court's denial of a motion to suppress under Rule 11(e)(6)(D) for clear error. *United States v. Jorgensen,* 871 F.2d 725, 730 (8th Cir.1989).

■ By its plain language, the rule excludes only those statements which are made "in the course of plea discussions." Fed. R.Crim.Proc. 11(e)(6)(D). In *Grant,* we recognized that a distinction exists under Rule 11(e)(6) between statements made during plea discussions and those made outside of the process. 622 F.2d at 315. We held that several of the *Grant* defendant's statements were inadmissible because they were made "as a part of the plea bargain negotiation process", *id.* at 315, while a later statement "not made in connection with the negotiations for the plea bargain" was admissible. *Id.* at 316.

■ In a fact situation quite similar to the present, the Eleventh Circuit reached the same conclusion. *See United States v. Knight,* 867 F.2d 1285 (11th Cir.1989). The *Knight* court observed that the policy underlying Rule 11(e)(6)(D) is "to allow a defendant to freely negotiate without fear that statements will [later] be used against him." 867 F.2d at 1288. However, once a plea agreement has been reached, statements made thereafter are not entitled to the exclusionary protection embodied in Rule 11(e)(6). *Id. See also United States v. Davis,* 617 F.2d 677, 685 (D.C.Cir.1979) ("Excluding testimony made after—and pursuant to—the agreement would not serve the purpose of encouraging compromise").

■ In the present case, the district court determined that the statements which Lloyd sought to suppress were not made in the course of plea negotiations, but rather were made after the plea agreement had been reached and pursuant to the agreement's terms. The record indicates that after Lloyd was arrested, he was presented with a proposed plea agreement by the United States Attorney's office which he accepted and signed, and thereafter, he provided information pursuant to the terms of the agreement. Once Lloyd signed the agreement, negotiations terminated and Rule 11(e)(6) by its terms no longer required exclusion of his subsequent statements. Furthermore, the plea agreement states that upon its breach, the government would not be precluded from introducing the statements or other information which Lloyd had provided. The district court committed no error in determining that the challenged statements were made after the plea agreement was reached and pursuant to its terms, and therefore Rule 11(e)(6) does not require suppression of the statements.

■ Lloyd also contends that the district court erred in using his statements to determine quantity and other issues at sentencing. We believe that the statements were usable at sentencing for the same reason they were admissible at trial. Moreover, we have held that "[i]n determining the relevant facts, the sentencing court is not restricted to considering information that would be admissible at trial." *United States v. Granados,* 962 F.2d 767, 772 (8th Cir. 1992). *See also United States v. Ruminer,* 786 F.2d 381, 387 (10th Cir.1986) (holding

that the prohibition of Rule 11(e)(6)(D) is inapplicable to sentencing proceedings). The district court committed no error in using the statements at sentencing.

## B. *Lloyd's Criminal History Score*

■ Lloyd contends that the district court erred in assessing one out of a total of seven points to his criminal history score under the United States Sentencing Commission, *Guidelines Manual* §§ 4A1.1(c) and 4A1.2(c)(1) (1992), for a prior misdemeanor conviction for driving while his license was suspended. Specifically, Lloyd argues that the sentence imposed for that conviction was not a term of probation of at least one year within the meaning of U.S.S.G. § 4A1.2(c)(1). The district court determined that Lloyd's criminal history score was 7, placing him in category IV, which together with his offense level of 38 subjected him to a Guidelines range of 324–405 months. If the disputed point were subtracted from Lloyd's criminal history score, reducing it to 6, he would be placed in category III and subject to a sentence of 292–365 months. We review the district court's factual findings at sentencing under the clearly erroneous standard, while the application of a Guidelines provision to the facts of the case presents an issue of law that we review de novo. *United States v. Frieberger*, 28 F.3d 916, 918 (8th Cir.1994).

■ Guidelines § 4A1.2(c)(1) provides that certain enumerated prior misdemeanor offenses (specifically including driving while a license is suspended) are to be calculated in a defendant's criminal history score if the sentence imposed "was a term of probation of at least one year." U.S.S.G. § 4A1.2(c)(1). The presentence investigation report (PSR), indicates that Lloyd was convicted in Illinois state court in 1992 of "Driving While License Suspended," for which he received a sentence of "conditional discharge"[4] with "18 months inactive supervision."[5] Because a term of "inactive supervision" was imposed for more than one year, we proceed to ascertain whether a sentence of "conditional discharge" under Illinois law falls within the meaning of "probation" contained in U.S.S.G. § 4A1.2(c)(1). We have not previously defined the contours of "probation" as it is found in § 4A1.2(c)(1), but we recognize that determining the scope of the term will require careful scrutiny of the state law at issue. The Seventh Circuit has taken occasion to interpret the scope of § 4A1.2(c)(1) in the specific context of a "conditional discharge" under Illinois law. *See United States v. Caputo*, 978 F.2d 972 (7th Cir.1992).

In *Caputo*, the defendant had been sentenced in Illinois state court to "a one-year sentence of 'conditional discharge' for resisting a peace officer." 978 F.2d at 976. The court observed that the only distinction between sentences of formal probation and "conditional discharge" under Illinois law is that in the former the defendant is monitored by a probation officer, while in the latter no such supervision is provided. *Id.* at 976–77. The court stated that "conditional discharge" is "probation without the probation officer and that is a distinction without a difference so far as the purposes of the guideline[s] [are] concerned." *Id.* at 977. The court ultimately held that "conditional discharge" under Illinois law falls within the ambit of "probation" as it is found in Guideline § 4A1.2(c)(1). *Id. See also United States v. Scott*, 19 F.3d 1238, 1246 (7th Cir.) (holding that district court did not err in concluding that "conditional discharge" is a non-supervisory form of probation and thus a "prior sentence" under U.S.S.G. § 4A1.2(c)(1)), *cert. denied*, —— U.S. ——, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994).

In a related vein, we have observed that the term "probation" contained in Guideline § 4A1.1(d) encompasses both sentences of "unsupervised" and "supervised" probation. *See United States v. Bailey*, 955 F.2d 28, 29 (8th Cir.1992). *See also United States v. Knighten*, 919 F.2d 80, 82 (8th Cir.1990) (stating that "supervised" and "unsuper-

---

4. " 'Conditional discharge' means a sentence or disposition of conditional and revocable release without probationary supervision but under such conditions as may be imposed by the court." Ill.Rev.Stat. ch. 38, para. 1005–1–4 (1989).

5. " 'Supervision' means a disposition of conditional and revocable release without probationary supervision, but under such conditions and reporting requirements as are imposed by the court, at the successful conclusion of which disposition the defendant is discharged and a judgment dismissing the charges is entered." Ill.Rev.Stat. ch. 38, para. 1005–1–21 (1989).

vised" probation are treated as equivalent under § 4A1.1(d)).[6] Although § 4A1.1(d) presents somewhat different issues from those involved here, we believe the nature of a sentence of "conditional discharge" to be the functional equivalent of "unsupervised probation," thus "conditional discharge" under Illinois law would likely fall within the meaning of "probation" contained in § 4A1.1(d). We see no reason why the term "probation" in § 4A1.2(c)(1) should be given a different meaning from its counterpart in § 4A1.1, a section which relates to § 4A1.2 and immediately precedes it.[7] *See Caputo,* 978 F.2d at 977 ("[s]ince unsupervised probation equals conditional discharge, we think the latter should be equated to probation" for the purposes of §§ 4A1.1(d) and 4A1.2(c)(1)).

 We hold that the term "probation" contained in U.S.S.G. § 4A1.2(c)(1) encompasses a sentence of "conditional discharge" as defined in Illinois law.[8] Thus, the district court did not err in adding one point to Lloyd's criminal history score for his conviction of driving while his license was suspended.[9]

## CONCLUSION

For the reasons enumerated above, we affirm Lloyd's conviction and sentence.

---

6. Moreover, U.S.S.G. § 4A1.1, application note 4, treats "supervised" and "unsupervised" probation identically, stating that the term "criminal justice sentence" found in § 4A1.1 encompasses both sentences of "active supervision" and "unsupervised probation."

7. Indeed the commentary preceding the Application Notes to U.S.S.G. § 4A1.1 states that "§§ 4A1.1 and 4A1.2 must be read together." U.S.S.G. § 4A1.1, intro. comment.

8. In reaching this conclusion we in no way mean to imply that in every instance in which a defendant has a prior conviction for which a sentence of court supervision was imposed, such period of supervision is to be deemed the equivalent of probation within the meaning of § 4A1.2(c)(1). We merely hold in this case that a "conditional discharge" under Illinois law falls within the meaning of probation under U.S.S.G. § 4A1.2(c)(1).

---

9. Lloyd also contends that the district court erred in assessing one point to his criminal history score for his prior convictions of interference with official acts and simple assault. However, after carefully reviewing the record, we do not believe that the district court used those offenses in calculating Lloyd's criminal history score. The district court expressly sustained Lloyd's objection to the use of these offenses in calculating his criminal history score because they relate to Lloyd's conduct at the Waterloo airport on the date of his arrest and therefore involve conduct that is "part of the instant offense" under U.S.S.G. § 4A1.2(a)(1). (Sent. Tr. at 27–28). Finally (given our disposition of his argument concerning the first disputed criminal history point), even if the district court had erroneously assessed one additional point to Lloyd's criminal history score for these offenses, it would not have changed Lloyd's criminal history category (and sentencing range). Accordingly, Lloyd's claim is without merit.